# UNUM Life Insurance Company of America
# v. Carlins

*Templeton Smith Jr.,* for plaintiff.
*William S. Schweers Jr.,* for defendant.

MOSCHETTA, *J.,* October 11, 2005—

## I. FINDINGS OF FACT

### A. *Findings of Fact Not in Dispute*

(1) Plaintiff, UNUM Life Insurance Company of America, is a corporation existing under the laws of the State of Maine. Its principal office is located at 2211 Congress Street, Portland, Maine.

(2) Defendant, Leslie A. Carlins, is an individual residing at 6902 Spruce Street, Finleyville, Washington County, PA. Prior to July 7, 1998, Carlins was employed as a registered nurse in the intensive care unit of the University of Pittsburgh Medical Center.

(3) At all relevant times, Carlins was insured under a disability insurance policy, identified as policy no. ********, which was provided by UNUM through Carlins' employer.

(4) The policy provides benefits to insureds who are "disabled" as that term is defined in the policy.

(5) The policy sets forth the following criteria on page LTD-BEN-1 for determining whether an insured individual is "disabled" and may thus be entitled to benefits under the policy:

"You are disabled when UNUM determines that:

"You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and, if applicable, you have a 20 percent or more loss in your indexed monthly earnings due to the same sickness or injury.

"After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience . . .

"REGULAR OCCUPATION means the occupation you are routinely performing when your disability begins."

(6) The policy, on page LTD-CLM-2 further provides:

"WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

"UNUM has the right to recover any overpayments due to:

"—fraud

"—any error UNUM makes in processing a claim; and

"—your receipt of deductible sources of income.

"You must reimburse us in full. We will determine the method by which the repayment is to be made.

"UNUM will not recover more money than the amount we paid you."

(7) Carlins submitted a short-term/long-term disability claim form to UNUM, pursuant to the policy, alleging a disability as of July 7, 1998, and further alleging that her last day worked was July 6, 1998.

(8) By letter dated March 3, 1999, UNUM informed Carlins that her request for disability benefits had been approved, and that benefits would be paid beginning with the first day following the policy's elimination period, which was January 5, 1999. The letter further

explained that UNUM would pay Carlins a lump sum for the period from January 5, 1999 through March 4, 1999, and thereafter would send her monthly payments. The letter also enclosed a form upon which Carlins was to indicate her preference with regard to the reduction of disability benefits to account for potential Social Security Disability benefits. The form, executed by Carlins on March 8, 1999, provided as follows, in relevant part:

"I agree to reimburse UNUM immediately in full for the amount of any overpayment regardless of option chosen."

(9) Via letter dated October 11, 2000, which explained UNUM's rehabilitation program, UNUM reminded Carlins that her eligibility for ongoing benefits would continue to be objectively assessed whether or not she participated in rehabilitation efforts.

(10) Via letter dated December 5, 2000, UNUM informed Carlins that it had concluded a review of her disability claim and had determined that, based upon the Supplemental Statement and Functional Capacity Estimate forms completed by Carlins' physician, Carlins was capable of performing the material and substantial duties of a registered nurse, and was thus not "disabled" as that term is defined in the policy. The letter also advised Carlins of her appeal rights under the policy.

(11) Carlins appealed UNUM's denial of her disability claim via letter dated December 15, 2000.

(12) Via letter dated December 20, 2000, UNUM informed Carlins' attorney that the additional material he

had submitted in support of Carlins' claim was insufficient to warrant a reversal of the decision to deny that claim. The letter further stated that Carlins' file had been forwarded to UNUM's Quality Review Unit for an impartial review, as required by ERISA.

(13) Via letter dated March 16, 2001, UNUM notified Carlins' attorney that it had reviewed its denial of benefits under the policy and concluded that such denial was appropriate, as a medical review revealed no support for a finding of disability throughout the duration of her claim. The March 16, 2001 letter further explained that UNUM's decision was based upon a review of Carlins' file by a physician and the results of surveillance of Carlins conducted during November 2000.

(14) Between the time it commenced disability payments to Carlins and December 10, 2000, when it discontinued such payments pursuant to the terms of the policy, UNUM had paid Carlins a total of $37,503.40.

(15) Via letter dated April 3, 2001, Recovery Specialist Elise Coffin of UNUM's Financial Recovery Unit demanded that Carlins reimburse UNUM the $37,503.40 worth of benefits that UNUM had paid her.

(16) The policy imposes the following limitations on claim-related legal actions by Carlins against UNUM:

"You can start legal action regarding your claim 60 days after proof of claim has been given and up to three years from the time proof of claim is required, unless otherwise provided under federal law."

(17) The policy contains the following time limitation on the submission of proof of claim:

"Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send UNUM written proof of your claim no later than 90 days after your elimination period."

(18) The Disability policy provides the following elimination period:

"Your elimination period is the later of:

"—180 days [from the date of your disability]; or

"—the date your short-term disability payments end, if applicable."

(19) Carlins did not receive any short-term disability payments under the policy. Accordingly, her elimination period ran for 180 days from July 7, 1998, the date upon which she claimed to have become disabled, and ended on January 3, 1999.

(20) Pursuant to the provision of the policy quoted in paragraph 17 above, Carlins was required to file her proof of claim no later than 90 days after January 3, 1999 (March 4, 1999). (Plaintiff actually filed her proof of claim on July 10, 1998.)

(21) Pursuant to the provision of the policy quoted in paragraph 16 above, Carlins had three years from March 4, 1999 (March 4, 2002) to file a legal action with regard to her claim.

(22) Carlins did not commence any legal action regarding her claim within three years of March 4, 1999 and is, therefore, foreclosed from challenging UNUM's denial of benefits.

(23) To date, Carlins has failed to repay the $37,503.40 demanded by UNUM.

B. *Stipulation As to Issue To Be Decided*

The parties have stipulated to the following:

The sole issue before the court in this case is whether the provision, in the long-term disability insurance policy issued by plaintiff UNUM to Carlins, that "UNUM has the right to recover any overpayments due to . . . any error UNUM makes in processing a claim" entitles UNUM to recover the benefits it paid to Carlins for the period January 5, 1999 through December 10, 2001.

## II. CONCLUSIONS OF LAW

The court makes the following conclusions of law:

(1) Because the policy is contained in a written agreement between the parties, its terms must be construed against UNUM, the party that prepared the contract. *Ormond Realty v. Ninnis,* 341 Pa.Super. 101, 105, 491 A.2d 169, 172 (1985); *Central Transportation v. Board of Assessment Appeals of Cambria County,* 490 Pa. 486, 417 A.2d 144 (1980).

(2) In construing an agreement, the court must interpret it as a whole, giving words their ordinary meaning. *Pines Plaza Bowling Inc. v. Rossview Inc.,* 394 Pa. 124, 125, 145 A.2d 672, 676 (1958). Because UNUM does not define the term "processing a claim" (although the policy does contain definitions of other terms), the court must interpret those words giving them their ordinary meanings. Merriam-Webster defines the word "process" as follows:

"*a* to subject to a special process or treatment (as in the course of manufacture) *b* (1) : to subject to or handle

through an established usually routine set of procedures <*process* insurance claims> (2) : to subject to examination or analysis <computers *process* data> *c* : to work (hair) into a conk."

Notably, the term "process insurance claims" is so common, widely accepted and understood, that Merriam-Webster uses it to illustrate appropriate usage of the word "process." Further, the ordinary meaning of "process" as it is used in that phrase is *"to subject or handle through an established usually routine set of procedures."* (emphasis added) Thus, the court interprets the term "processing a claim" in the context of the policy as referring to the procedural, administrative series of steps UNUM takes as a matter of course in handling claims for benefits, not the variable, substantive, individually tailored steps it may take on a case-by-case basis, such as surveillance of claimants, telephone calls to claimants' physicians, and research on claimants' particular medical conditions.

(3) The Pennsylvania Supreme Court has held: "[w]here the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, *while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.* If one construction would make it unreasonable while another would do justice to both parties, the latter will be adopted." *New Charter Coal Co. v. McKee,* 411 Pa. 307,

315, 191 A.2d 830, 834-35 (1963). (citations omitted) (emphasis in original) (footnote omitted) With this principle in mind, the court concludes that an application of plaintiff UNUM's reading of the policy term requiring the policyholder to compensate UNUM for errors made in "processing a claim" would be inequitable, unusual, and irrational. According to plaintiff's definition, a policyholder would be responsible for paying UNUM back if, after UNUM deemed the policyholder disabled and disbursed years worth of monthly benefits, UNUM suddenly and unilaterally decided the policyholder was not disabled after all, and that its original determination of disability was erroneous because it has not investigated the disability claim thoroughly enough and/or its employees had not done an adequate job confirming the policyholder's disability. Such a reading of the policy language would not only create an inequitable result for the policyholder, but also defies logic in that it might well cause a disincentive for insurers to thoroughly and accurately investigate disability claims. If UNUM had intended for the provision in question to require policyholders to repay benefits for its own lack of thoroughness in investigating claims, it could have easily included language to express such intent. If defendant had known that she might be required to pay UNUM back under these circumstances, she might have sought out a disability insurance policy from a different carrier. In any case, she would have been unlikely to enter into an agreement with UNUM.

(4) Defendant's reading of the policy language at issue, on the other hand, makes the agreement much more rational and probable and also does justice to both par-

ties. It is highly more likely that the parties both understood an "error in processing a claim" to mean what defendant proposes it means: an administrative or clerical error, such as a benefit check sent in the amount of $15,000 instead of $1,500. Thus, we adopt defendant's interpretation of the relevant policy language.

## VERDICT

And now, October 11, 2005, the court enters a verdict for defendant, Leslie A. Carlins, and against plaintiff, UNUM Life Insurance Company of America.